# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation,

    Plaintiff,

vs.

MICHAEL E. JARRETT, an individual; D. GERALD BING, JR., an individual; D. GERALD BING, JR., Trustee of the D. GERALD BING, JR. TRUST dated January 17, 2000; and DOES 1 through 10, inclusive,

    Defendants.

3:13-cv-00235-RCJ-VPC

**ORDER**

This case arises out of the default of a commercial loan and the alleged failure of three guarantors to honor a guaranty on the loan. Defendants have moved for an evidentiary hearing (ECF No. 10) and partial summary judgment (ECF No. 20). For the reasons given herein, the Court grants the Motion for an Evidentiary Hearing and denies the Motion for Partial Summary Judgment.

## I.   BACKGROUND AND PROCEDURAL HISTORY

The following facts are undisputed. Colonial Bank, N.A. ("Colonial") loaned Clock Tower Center, LLC ("Clock Tower") $3,400,000 in exchange for a promissory note (the "Note"). (Compl. ¶ 12, May 07, 2013, ECF No. 1). Clock Tower's obligations were secured by a deed of trust (the "Deed of Trust"), which collateralized real property located in Gardnerville, Nevada (the "Property"). (*Id.* ¶ 14). Clock Tower's indebtedness was further secured by a guarantee (the "Guarantee"), executed by three guarantors: Defendants Jarrett, Bing, and the

Bing Trust (collectively "Defendants" or "Guarantors"). (*Id. ¶* 15). Defendants Jarrett and Bing hold a combined 67.5% interest in Clock Tower, LLC. (Am. Statement of Financial Affairs, ECF 25-1, at 10).

Colonial's interest in the loan was ultimately acquired by Plaintiff Branch Banking and Trust Company ("BB&T"). (*Id.* ¶¶ 18–21). When the Note matured in April 2011, neither Clock Tower nor the Guarantors paid BB&T, (*Id.* ¶ 23), and Clock Tower filed for Chapter 11 bankruptcy before BB&T could conduct a foreclosure sale. (*Id.* ¶ 24). On April 4, 2013, the Bankruptcy Court entered an order confirming Clock Tower's plan for reorganization (the "Bankruptcy Plan") (*Id ¶* 25). Under the Bankruptcy Plan, BB&T's secured claim was reduced to $2,960,000 to reflect the decreased value of the real estate. (*Id* ¶ 26). BB&T was also granted an unsecured deficiency claim of $297,045 payable over six years. (*Id.*).

BB&T has filed this action against the Guarantors to enforce the Guarantee, arguing that because Clock Tower has failed to satisfy its obligations under the Loan Documents, the Guarantors are jointly and severally liable for the entire $3,400,000 originally due on the loan. (*Id.* ¶ 28). BB&T also seeks an award of fees and costs incurred during the bankruptcy proceedings, which it claims it is entitled to under the terms of the Guarantee. (*Id.* ¶ 35).

Defendants have filed a Motion for Partial Summary Judgment (ECF No. 20), contending that BB&T is not entitled to collect its fees and costs for its efforts in the Clock Tower bankruptcy because: (1) BB&T did not bring "legal action" for purposes of the attorneys' fees provision in Section 9 of the Guarantee; and (2) BB&T was not the "successful or prevailing party," as required by Section 9. (Mot. Partial Summ. J., ECF No. 20, at 6–7). BB&T responds, arguing that in addition to brining the required legal action, it was also a prevailing party because its participation in the proceedings resulted in a favorable outcome. Specifically, BB&T notes

that its participation resulted in the bankruptcy court's reduced valuation of BB&T's secured claim, and that but for this reduction, Clock Tower would be required to pay less per month, causing BB&T to bear a greater risk of non-payment. (Opp'n to Mot. Partial Summ. J., ECF No. 25, at 5 (citing Summ. of Schedules, ECF No. 25-2, at 1; First Am. to Debtor's Plan of Reorganization, ECF No. 25-3, at 2–3; Findings of Fact & Conclusions of Law, ECF No. 20-2, at 10)). Because of its actions in the bankruptcy proceedings, BB&T is due to receive an additional $92,866.48 over the next six years. (*Id.*).

Defendants have also filed a Motion for an Evidentiary Hearing (ECF No. 10), arguing (1) that NRS § 40.495(4)(a) requires the Court to hold a hearing to determine the fair market value of the property;  and (2) that NRS § 40.495(4)(b)(1) limits the Court's authority to enter judgment  against the Guarantors to the "amount by which the amount of the indebtedness exceeds that fair market value of [the Property] as of the date of the commencement of the action." (Mot. for Hr'g, ECF No. 10, at 3–4 ). BB&T contends that because the value of the property was recently determined in contested bankruptcy proceedings, in which Guarantors Jarrett and Bing participated, the issue is subject to collateral estoppel, and therefore, a hearing is unnecessary. (Opp'n to Mot. for Hr'g, ECF No. 18, at 2–3).

**II.    LEGAL STANDARDS**

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

### III. ANALYSIS

**A. Motion for Partial Summary Judgment**

As a preliminary matter, the Court notes that a federal district court exercising diversity jurisdiction is required to apply the substantive law of the state in which it sits. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Nevada law, attorneys' fees and costs are recoverable when such an award is authorized by a statute, rule, or contractual provision. *Albios v. Horizon Communities, Inc.*, 122 Nev. 409, 417, 132 P.3d 1022, 1028 (2006). When the facts are not in dispute, an issue of contract interpretation of is a question of law. *Shelton v. Shelton*, 119 Nev. 492, 497, 78 P.3d 507, 510 (2003).

The Guarantors contend that BB&T is not entitled to collect any fees or costs under Section 9 of the Guarantee, which governs the award of fees and costs. The Court disagrees.

Section 9 of the guarantee provides, in relevant part, that:

> If any legal action or any arbitration or other proceeding (including a proceeding in bankruptcy) is brought for the *enforcement* of any provisions of this Guarantee or any of the Loan Documents or because of an alleged dispute, breach, Event of Default or misrepresentation in connection with any of the provisions of any of the Loan Documents, the *successful or prevailing* party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action proceeding.

(Guarantee, ECF No. 20-1, at 6). The Guarantors support their conclusion with three arguments, none of which are persuasive.

First, the Guarantors claim that Section 9 does not contemplate voluntary bankruptcy petitions, such as Clock Tower's. The defect in this argument is that Section 9 does not qualify particular types of bankruptcy proceedings; it simply states that it applies to "a proceeding in bankruptcy." If, as the Guarantors claim, this provision was meant to apply to involuntary bankruptcies exclusively, it should have included qualifying language to that effect. *See Love v.*

*Love*, 114 Nev. 572, 580, 959 P.2d 523, 529 (1998) ("Where language in a document is clear and unambiguous on its face, the court must construe it based on this plain language."). Moreover, the Guarantors provide no reason why the parties would agree that attorney's fees would be available in an involuntary bankruptcy but not a voluntary bankruptcy. In either case, BB&T would have to participate in order to protect its interest as Clock Tower's largest creditor and would accrue fees and costs in an effort to preserve its rights under the Note and the Deed of Trust. Therefore, the Court declines Guarantor's invitation to infer such a limitation from the plain language of Section 9. *See Ellison v. California State Auto. Ass'n*, 106 Nev. 601, 603, 797 P.2d 975, 977 (1990) ("It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written.").

 Next, Guarantors argue that even if Section 9 contemplates an involuntary bankruptcy proceeding, BB&T's participation in the Clock Tower bankruptcy did not concern "the enforcement of any provisions . . . in any of the Loan Documents." (Mot. Partial Summ. J., ECF No. 20, at 6). Specifically, Guarantors contend that because BB&T's participation in the bankruptcy was limited to filing a motion to lift the automatic bankruptcy stay and raising objections to the reorganization plan, its actions were merely procedural and "had no substantive legal connection to the Deed of Trust." (Reply, ECF No. 29, at 5). The Court disagrees. BB&T participated in the bankruptcy for the precise purpose of protecting its ability to enforce its rights under the Note and the Deed of Trust. Indeed, BB&T's ability to enforce the terms of the Loan Documents, including the amount of Clock Tower's total indebtedness under the Note, and the value BB&T's security under the Deed of Trust, post-confirmation, hinged on its ability to reserve those rights pre-confirmation.

Furthermore, BB&T was forced to participate in Clock Tower's bankruptcy "because of an . . . Event of Default," within the language of Section 9. This is because Clock Tower's, $3,400,000 indebtedness to BB&T, which it sought to reorganize under Chapter 11, was not triggered until it defaulted on the Note. (Promissory Note, ECF No. 26-1). Thus, but for Clock Tower's failure to pay the note (i.e., the "Event of Default"), BB&T would have had no reason to participate in the bankruptcy proceedings in the first place. Accordingly, the Court finds that BB&T's participation in the bankruptcy proceedings constitutes a legal action for purposes of triggering Section 9.

Finally, the Guarantors argue that even if BB&T took the requisite legal action, it "was clearly not the successful or prevailing party" because each of its motions and objections failed. (Mot. Partial Summ. J., ECF No. 20, at 7). What this argument fails to consider, however, is that by participating in the bankruptcy proceedings BB&T significantly bettered its position as Clock Tower's creditor. Indeed, the parties do not dispute that BB&T's participation resulted in a $92,866.48 increase in Clock Tower's monthly payment plan. (Opp'n to Mot. Partial Summ. J., ECF No. 25, at 5).

While Nevada case law does not define "prevailing party" in the contractual context, the interpretation applied in the statutory context is instructive: "[a] plaintiff may be considered the prevailing party for attorney fee purposes if it succeeds on any significant issue in litigation which achieves some of the benefit it sought." *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 485-86, 851 P.2d 459, 464 (1993) (quoting *Hornwood v. Smith's Food King No. 1*, 105 Nev. 188, 192, 772 P.2d 1284, 1287 (1989); *see also Valley Elec. Ass'n v. Overfield*, 121 Nev. 7, 10, 106 P.3d 1198, 1200 (2005) (noting that the term "prevailing party" is broadly construed). Here, the record reveals that by participating in the bankruptcy proceedings, BB&T succeeded in

significantly strengthening its position as a post-confirmation creditor. Therefore, the Court finds that BB&T is a prevailing party for purposes of Section 9. Accordingly, BB&T is entitled to a conservative award of reasonable costs and fees, to the extent that it can prove them on summary judgment or at trial.[1]

### B. Motion for Evidentiary Hearing

In the present action, BB&T seeks to enforce an obligation to pay an indebtedness secured by a Deed of Trust on the Property. Because a foreclosure process has not been initiated, NRS §40.495 expressly limits this Court's authority with respect to how and whether it can render judgment against the Guarantors. Specifically, NRS §40.495 provides:

> 4. If, *before a foreclosure sale of real property, the obligee commences an action against a guarantor*, surety or other obligor, other than the mortgagor or grantor of a deed of trust, *to enforce an obligation to pay, satisfy or purchase all or part of an indebtedness or obligation secured by a mortgage or lien upon the real property*:
>
> (a) *The court must hold a hearing* and take evidence presented by either party concerning the fair market value of the property as of the date of the commencement of the action. Notice of such hearing must be served upon all defendants who have appeared in the action and against whom a judgment is sought, or upon their attorneys of record, at least 15 days before the date set for the hearing.
>
> (b) *After the hearing, if the court awards a money judgment against the guarantor, surety or other obligor who is personally liable for the debt, the court must not render judgment for more than*:
>
> (1) *The amount by which the amount of the indebtedness exceeds the fair market value of the property as of the date of the commencement of the action . . . .*

(emphasis added). This statute plainly requires the Court to schedule a hearing so that it can take evidence and determine: (1) the fair market value of the Property as of the date of the Complaint

---

[1] The Court notes that while BB&T contends that it has an alternative claim to fees and costs as part of the guaranteed indebtedness, the Court need not address this issue, having determined that BB&T is entitled to such an award under Section 9 of the Guarantee.

and (2) the amount by which the indebtedness exceeds the fair market value of the property, if it does at all. If the Court finds that the fair market value of the Property exceeds the indebtedness, the Court has no authority award any judgment for alleged amounts due under the Guarantee.

BB&T contends that the Guarantors are collaterally estopped from seeking a hearing. This argument fails. As an initial matter, BB&T has cited no authority for the implied proposition that the doctrine of collateral estoppel can be used to circumvent a statutorily-imposed limitation on the Court's authority to enter a judgment against the Guarantors. Nevertheless, even if the Guarantors could be collaterally estopped, BB&T cannot meet the doctrine's requirements.

To foreclose relitigation of an issue under collateral estoppel: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992). Here, the issue at stake is the value of the Property as of the date that BB&T filed its Complaint in this Court. This issue was not *actually litigated* in the bankruptcy proceedings, nor could it have been, because the bankruptcy proceedings predated the Complaint. Instead, the Bankruptcy Court relied on appraisals performed in 2012 in reaching its value determination. Moreover, the bankruptcy valuation and the valuation this Court is required to perform under NRS §40.495 are unlikely to be identical due to variables that have changed with passage of time. Therefore, the doctrine of collateral estoppel is inapplicable to the issue at hand.

Finally, to the extent that BB&T argues that "revisiting the value of the collateral . . . is an exercise futility" because it would not change what Clock Tower owes under the

Confirmation Order, (Opp'n to Mot. for Hr'g, ECF No. 18, at 3), the Court disagrees. First, BB&T has failed to cite any authority for the implied proposition that the Confirmation Order necessarily dictates, or is even relevant to, the amount recoverable under the Guarantee. In contrast, bankruptcy courts have repeatedly found that actions against non-debtor guarantors are state law claims that are not impacted by a debtor's bankruptcy. *In re Extended Stay Inc.*, 418 B.R. 49, 58 (Bankr. S.D.N.Y. 2009) *aff'd in part*, 435 B.R. 139 (S.D.N.Y. 2010) (noting that the court could find no authority "supporting an argument that the Bankruptcy Code preempts state law contract claims against a non-debtor who has independently guaranteed a debtor's obligations"); *In re S. Edge LLC*, 478 B.R. 403, 418 (D. Nev. 2012) (explaining that a bankruptcy court's finding that confirmation did not affect a guaranty under applicable state law is consistent with well settled law) (citing 11 U.S.C. § 524(e); *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 625 (9th Cir. 1989)).

Second, in the present case, the bankruptcy court determined the value of the property (based on 2012 appraisals) so that it could establish the amount of the secured and unsecured claims against Clock Tower. While the value of those claims is fixed as to Clock Tower, this is an entirely separate action, brought against new parties, to enforce a guarantee. Under these circumstances, Nevada law clearly requires the Court to hold a hearing to determine the fair market value of the property as of the date of the complaint, and it limits BB&T to recovering the "indebtedness" as of that date. That such hearing would not be futile is obvious: if BB&T believed that the value of the property had decreased between the date of the bankruptcy and the date of the Complaint, it would undoubtedly want to hold a hearing to establish a greater indebtedness. Accordingly, the Court grants the Guarantors' motion for an evidentiary hearing to determine the value of the Property at the time the present action was filed.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Partial Summary Judgment (ECF No. 20) is DENIED.

IT IS FURTHER ORDERED that the Motion for an Evidentiary Hearing (ECF No.10) is GRANTED.

IT IS FURTHER ORDERED that the Evidentiary Hearing at which the Court will take evidence to determine the fair market value of the Gardnerville property as of the date of the Complaint shall be held on Tuesday, November 12, 2013 at 10:00 AM, in Reno Courtroom 6, before Chief Judge Robert C. Jones.

IT IS SO ORDERED.

Dated:  This 22nd day of October, 2013.

_____
ROBERT C. JONES
United States District Judge