**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation, | )<br>)<br>)    3:13-cv-00235-RCJ-VPC |
|         Plaintiff, | )<br>)    **ORDER** |
| vs. | )<br>) |
| MICHAEL E. JARRETT *et al.*, | )<br>) |
|         Defendant. | )<br>) |

Before the Court is Plaintiff's Motion for Attorneys' Fees (ECF No. 71) as well as Defendants' Motion to Seal (ECF No. 83) and Defendants' Motion for Stay of Execution on Judgment (ECF No. 78).

**I.  BACKGROUND**

Clock Tower Center, LLC ("Clock Tower") borrowed $3,400,000.00 from Colonial Bank, N.A. secured by property located in Gardnerville, Nevada. Colonial Bank's interest in the loan was acquired by Plaintiff. Clock Tower defaulted on the loan and eventually filed for bankruptcy. The Bankruptcy Court for the District of Nevada confirmed Clock Tower's plan for reorganization and Plaintiff subsequently filed a lawsuit seeking recovery for the unpaid principle due on the loan plus interest. (Compl., ECF No. 1). Plaintiff received a $3,488,129.29 judgment in its favor when this Court granted Plaintiff's summary judgment motion (ECF

1

1  No. 69).  Plaintiff now requests attorneys' fees in the amount of $239,594.40 for expenses

2  incurred during the litigation. (Pl.'s Mot. Att'y Fees 1, ECF No. 71).

3        Defendants have filed a Notice of Appeal (ECF No. 73) and now move to have the

4  judgment stayed pending the appeal.  Instead of obtaining a supersedeas bond to secure the

5  judgment while the appeal is pending, Defendants request that the Court waive the bond

6  requirement, or alternatively, that they be allowed to use the Clock Tower property as security

7  for the judgment. (Defs.'s Mot. Stay of Execution on J. 4–5, ECF No. 78).  To support their

8  request, Defendants submitted financial records from 2013 for Defendant Bing to demonstrate

9  ability to pay the judgment.  Plaintiff's Opposition does not object to Defendant's request of a

10 stay, but instead it argues against waiving the bond requirement or allowing Defendants to use

11 alternative security to secure the judgment. (Pl.'s Opp'n to Defs.'s Mot. Stay of Execution on J.

12 1–2, ECF No. 88).

13 **II.    DISCUSSION**

14     **A.  Plaintiff's Motion for Attorneys' Fees**

15       Federal courts sitting in diversity award attorneys' fees in accordance with state law

16 when state substantive law applies. *Johnson v. Incline Vill. Gen. Imp. Dist.*, 5 F. Supp. 2d 1113,

17 1114 (D. Nev. 1998).  The calculation of the amount of attorneys' fees is a substantive state

18 right. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  Under Nevada

19 law, "the method upon which a reasonable fee is determined is subject to the discretion of the

20 court" and "is tempered only by reason and fairness." *Shuette v. Beazer Homes Holdings Corp.*,

21 124 P.3d 530, 548–49 (Nev. 2005) (quoting *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1188,

22 1186 (Nev. 1994)).  The court is not limited to one specific approach when calculating fees, but

23 it must consider factors such as the advocate's professional qualities, the nature of the litigation,

24

the work performed, and the result of the litigation. *Id.* at 549 (citing *Brunzell v. Golden Gate Nat'l Bank*, 455 P.2d 31, 33 (Nev. 1969)).

The Guarantee Agreement ("the Agreement") governing Clock Tower's loan states that "[i]f any legal action or any arbitration or other proceeding (including a proceeding in bankruptcy) is brought for the enforcement of any provisions of this Guarantee . . . the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding . . . ." (Guarantee Agreement ¶ 9, ECF No. 71-1). Defendants' Opposition does not challenge whether this provision of the Agreement entitles Plaintiff to attorneys' fees. (Defs.'s Opp'n to Pl.'s Mot. Att'y Fees 2, ECF No. 84). Rather, Defendants argue that the amount of fees that Plaintiff seeks is unreasonable. (*Id.*)

Plaintiff's motion addresses the *Brunzell* factors, and it includes an affidavit signed by counsel authenticating the billing records attached to the motion as required by LR 54-16. However, Defendants argue that the "block billing" style of Plaintiff's Fee Report makes it impossible to determine whether Plaintiff's counsel's work was reasonable or necessary. (*Id.* at 2–4). They also argue that without an unredacted billing statement, Defendants and the Court cannot fully evaluate the requested fees. (*Id.* at 4). The Court disagrees with both arguments. Block billing is problematic only if it inhibits the court's ability to determine whether the time spent and the work accomplished were reasonable. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (noting that black billing "makes it more difficult to determine how much time was spent on particular activities"). The burden on Plaintiff's counsel is to list the hours worked and identify the general subject matter of the time expended. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (citation omitted).

In this case, Plaintiff's counsel's Fee Report contains over 350 time entries. The majority of the entries are either single actions or activities that appear logically related to one another, such as researching law and drafting motions, (*see, e.g.*, Fee Report 10, ECF No. 71-2), or editing motions and drafting declarations, (*see,e.g.*, *id.* at 16). The Court acknowledges that there are entries containing multiple activities in a block billing format. Defendants, however, do not cite to any entries that they feel are problematic. They instead take issue with Plaintiff's time keeping reflected in the Fee Report as a whole, which the Court finds unpersuasive considering the low number of true block entries relative to the 356 total entries. Moreover, the Court's independent review of the Fee Report did not reveal any block entries of particular concern. Those blocks containing the largest amounts of time expended also include time intensive activities such as drafting motions, (*see, e.g.*, *id.* at 4, 10), conducting depositions, (*see, e.g.*, *id.* at 16), and attending hearings, (*see, e.g.*, *id.* at 16, 21). The explanations contained in the block entries sufficiently allow the Court to determine the reasonableness and necessity of each activity. *See Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 690 (9th Cir. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)) (stating that counsel is not required to record in great detail "how each minute of his time was expended").

The Court also finds that the majority of the redacted portions of the Fee Report do not unduly inhibit its ability to determine the reasonableness of Plaintiff's counsel's entries. Not every entry is redacted and the entries that do contain redactions present pertinent information except the specific subject of conversations, conferences, and in some instances, research. (*See,e.g.*, Fee Record 2, 5, 16). *Cf. Arndell v. Robinson, Belaustegui, Sharp & Low*, No. 3:11-cv-469-RCJ-VPC, 2013 WL 1121802, at *2 (D. Nev. Mar. 14, 2013) (stating that the party seeking attorneys' fees had redacted *every* description of work performed making it impossible for the

1 court to determine reasonableness). Plaintiff's counsel believes the redactions necessary since
2 Defendants are appealing the judgment awarded in this case to the Ninth Circuit, and the entries
3 in question contain information covered by the attorney-client privilege and the work-product
4 privilege. (Pl.'s Reply to Defs.'s Opp'n 6, ECF No. 89). Defendants contend that Plaintiff's
5 counsel possessed extensive knowledge on the legal issues involved in this case. (Defs.'s Opp'n
6 to Pl.'s Mot. Att'y Fees 5). They assert that Plaintiff's redactions to their Fee Report
7 demonstrate a failure to explain why additional research was necessary in this particular case or
8 whether the research conducted was reasonable.

9 Counsel certainly benefits from familiarity with a specific area of law. It is that
10 familiarity that increases the value an attorney contributes to a client's case. Knowledge and
11 previous experience with particular legal issues surely aid attorneys when addressing similar
12 problems for other clients. However, familiarity with an area of law does not equate to mastery
13 of all legal intricacies as they relate to a client's unique situation. The legal issues presented in
14 this case were sufficiently complex that Defendants' themselves invested considerable resources
15 in defending against Plaintiff's complaint. The Court finds that Plaintiff's counsel's previous
16 participation in the Clock Tower bankruptcy and litigation involving personal guarantees, NRS
17 Chapter 40, and Assembly Bill 273 is not dispositive evidence that the research conducted in this
18 case is unreasonable. Even where there may be overlap between legal questions between cases,
19 the specific facts of a particular case generate new questions and ideas that require inquiry.
20 Thus, the Court finds that Defendants' arguments regarding Plaintiff's counsel's previous
21 experience does not require Plaintiff to submit a completely unredacted copy of its counsel's Fee
22 Record. *See MGIC Indem.Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986) (holding that
23 certain redactions were allowable concerning matters of attorney-client privilege).
24

5

The exhibit shows that Plaintiff's counsel used a partner-associate approach to complete the work and that lead counsel who is a partner at the firm used an associate at a lower billing rate to complete most of the work. The litigation in this case lasted for just over a year and included five separate motions, three of which were filed by Defendants, in addition to several hearings. Plaintiff prevailed on every one of those motions, including its motion for summary judgment in which it was awarded complete repayment plus interest on the loan at issue. The fees Plaintiff seeks are roughly 6% of the value of the overall $3,488,129.29 judgment. The total hours billed by all attorneys and staff working on the case during its course totaled 826.7 hours, which Plaintiff's counsel attributes to document review, research, drafting pleadings and motions, drafting correspondence, conducting discovery, and preparation and attendance at various hearings. The narratives contained in the Fees Report support these assertions made by Plaintiff's counsel. Nevertheless, the Court finds that a few of Plaintiff's counsel's redactions do make it difficult to determine the reasonableness of certain entries.[1] The Court reduces its award of fees accordingly by $31,616.40.

Therefore, the Court in its discretion DENIES in part and GRANTS in part Plaintiff's motion for attorneys' fees in the amount of $207,978.00.

///

---

[1] The Court could not determine reasonableness due to redactions for the following entries: Frank LaForge, 8/13/2013; Frank LaForge, 8/15/2013; Frank LaForge, 8/28/2013; Frank LaForge, 8/30/2013; Frank LaForge, 9/4/2013; Timothy Lukas, 9/9/2013; Cyndy Arnold, 9/9/2013; Frank LaForge, 9/13/2013; Tamara Reid, 9/13/2013; Frank LaForge, 9/18/2013, Tamara Reid, 9/19/2013; Timothy Lukas, 9/26/2013; Frank LaForge, 10/11/2013; Timothy Lukas, 10/14/2013; Cyndy Arnold, 10/14/2013; Tamara Reid, 10/15/2013; Frank LaForge, 10/16/2013; Timothy Lukas, 10/16/2013; Tamara Reid, 10/21/2013; Tamara Reid, 10/23/2013; Frank LaForge, 10/30/2013; Cyndy Arnold, 11/7/2013; Timothy Lukas, 11/24/2013; Stephan Hollandsworth, 11/27/2013; Frank LaForge, 12/4/2013; Tamara Reid, 12/4/2013; Timothy Lukas, 12/5/2013; Timothy Lukas, 12/6/2013(a); Timothy Lukas, 12/6/2013(b); Stephan Hollandsworth, 12/6/2013; Tamara Reid, 12/6/2013; Stephan Hollandsworth, 12/9/2013; Tamara Reid, 12/11/2013; Timothy Lukas, 12/12/2013; Tamara Reid, 1/24/2014; Tamara Reid, 2/13/2014; Frank LaForge, 3/28/2014; Tamara Reid, 3/28/2014; Frank LaForge, 4/21/2014; Timothy Lukas, 5/22/2014; Timothy Lukas, 5/28/2014; Timothy Lukas, 6/5/2014.

**B. Defendants' Motion for Stay of Execution on Judgment**

Pursuant to Rule 62(d), the Court may grant a motion to stay the execution on a judgment pending an appeal. Fed. R. Civ. P. 62(d). The movant is entitled to the stay if it complies with the bond requirement under Rule 62(d). *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 (9th Cir. 2000). The bond amount ordinarily includes the full judgment total, costs on the appeal, interest, and any damages for delay. *Trs. of N. Nev. Operating Eng'rs Health & Welfare Trust Fund v. Mach 4 Contr., LLC*, No. 3:08-cv-00578-LRH-WGC, 2013 WL 5838711, at *1 (D. Nev. Oct. 29, 2013) (Hicks, J.). "The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal." *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir. 1979). The judgment debtor may use the bond to avoid paying the judgment just to have it reversed on appeal and then find that restitution is impossible. *Id.* at 1191. The bond also protects the prevailing party against any loss resulting from being forced "to forgo execution on the judgment during the course of an ineffectual appeal." *Id.* A party is entitled to waiver of the bond requirement only in extraordinary cases. *See Bemo USA Corp. v. Jake's Crane, Rigging & Transport Int'l Inc.*, No. 2:08-cv-745-JCM-PAL, 2010 WL 4604496, at *1 (D. Nev. Nov. 5, 2010) (Mahan, J.) (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990)). Moreover, the party requesting a waiver of a full security supersedeas bond has the burden of objectively demonstrating to the court the reasons why a full bond should not be required. *Poplar Grove Planting & Ref. Co.*, 600 F.2d at 1191. The court generally will not grant a waiver unless the filing of a supersedeas bond "would irreparably harm the judgment debtor and, at the same time, such a stay would not unduly endanger the judgment creditor's interest in ultimate recovery." *Quiroz v. Dickerson*, No. 3:10-cv-00657-LRH-WGC, 2013 WL

5947459, at *1 (D. Nev. Nov. 1, 2013) (Hicks, J.) (quoting *Cayuga Indian Nation of N.Y. v. Pataki*, 188 F. Supp. 2d 223, 254 (N.D.N.Y. 2002)).

Defendants request that the bond requirement be waived because Defendant Bing has provided the Court with a record of his financial status, which Defendants argue demonstrate their ability to satisfy the judgment should they lose on appeal. (Defs.'s Mot. Stay of Execution on J. 4). The 2013 financial report shows that Defendant Bing claims to have a net value of over $20,000,000.00. This is well above the judgment amount of $3,488,129.29. However, the vast majority of Defendant Bing's assets are illiquid. Waiving the bond requirement based solely on a private individual's financial status at the beginning of an appeal would be irresponsible considering the uncertainty of business investments and the stock market. Further, Defendants present no type of plan to explain how Defendant Bing will maintain his current level of solvency during the appeal. *See Poplar Grove Planting & Ref. Co.*, 600 F.2d at 1191 (stating that a judgment debtor should present to the court "a financially secure plan for maintaining that same degree of solvency during the period of an appeal"). Defendant Bing's current financial stability convinces the Court that he would not suffer irreparable harm if required to obtain a bond. Accordingly, Defendants' request for waiver is denied.

Defendants alternatively seek to use the Clock Tower property to secure the judgment during the appeal rather than a bond. (Defs.'s Mot. Stay of Execution on J. 5). The Court notes that this is the same property that is the subject of the judgment Defendants are appealing. It is within a court's discretion whether to allow other forms of judgment guarantees. *Townsend*, 929 F.2d at 1367 (citing *Int'l Telemeter v. Hamlin Int'l Co.*, 754 F.2d 1492, 1495 (9th Cir. 1985)). "Nonetheless, only 'extraordinary circumstances' will support the provision of security other than a supersedeas bond." *U.S. ex rel. Small Bus. Admin. v. Kurtz*, 528 F. Supp. 1113, 1115 (E.D.

Pa. 1981) (citations omitted).  For instance, the court may allow other forms of judgment guarantees when the judgment debtor demonstrates the "financial ability to facilely respond to a money judgment and presents to the court a financially secure plan for maintaining that same degree of solvency during the period of an appeal." *Poplar Grove Planting & Ref. Co.*, 600 F.2d at 1191.

Defendants assert that requiring them to purchase a bond would be a waste of money because bond issuers typically charge a 10% fee merely to issue the bond. (*Id.*).  The size of the judgment in this case would thus cost Defendants around $400,000 regardless of whether they prevail on appeal. (*Id.*).  Defendants claim that this amounts to a penalty for simply exercising their right to appeal this Court's ruling. (*Id.* at 5).  The Court disagrees.  The dual purpose of a supersedeas bond protects the interests of both parties while the case in on appeal.  The cost to an appellant to obtain a bond is what the appellant pays for the peace of mind that if the appellant is successful on appeal, he or she will not have to rely on the opposing party's ability to repay the judgment in order to recoup what was spent to originally satisfy the judgment.  It is no penalty. Defendants provide no evidence that the 10% fee is the only rate available or that when they went looking for a bond, 10% was the rate at which they would have been charged.

But even if the Court assumes that Defendants will be out 10% of the bond's value, that alone does not persuade the Court that Defendants' situation reflects an extraordinary circumstance.  Defendant Bing has the ability to obtain a bond as represented in his financial records and payment of the bond issuer's fee would not cause irreparable harm even if Defendants ultimately prevail on appeal.  Defendants provide no sort of plan to accompany the financial statement showing that Defendant Bing will remain at his current level of solvency throughout the appeal.  The parties dispute over the actual value of the Clock Tower property,

1  and there is no guarantee of what the property's value will be at the conclusion of Defendants'
2  appeal.  Finally, the fact that the current bankruptcy reorganization plan would need to be
3  amended before the Clock Tower property could be used as security for the judgment further
4  convinces the Court that requiring Defendants to post a full bond is the appropriate method here.
5      Therefore, the Court grants Defendants' motion to stay the execution of judgment on the
6  condition that Defendants post a full supersedeas bond in the amount of $3,343,412.62.  This
7  amount reflects the total judgment against Defendants less the $20,673.81 payments made to
8  Plaintiff from March 2014 through September 2014 as per the reorganization plan.  If this
9  Court's judgment is affirmed, Plaintiff is to receive the amount of the bond less any payments
10  made by Defendants on the Clock Tower property from October 2014 to the end of the appeal.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Motion for Attorneys' Fees (ECF No. 71) is GRANTED in part and DENIED in part with a fee award of $207,978.00.

IT IS FURTHER ORDERED that Defendant's Motion for Stay of Execution on Judgment (ECF No. 78) is GRANTED on the condition Defendants post a bond in the amount of $3,343,412.62 within twenty (20) days of the issuance of this Order with a qualified third-party financial institution.  Defendant's Motion to Seal (ECF No. 83) is also GRANTED.

IT IS SO ORDERED.


Dated: September 16, 2014.

_____
ROBERT C. JONES
United States District Judge